UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANTHONY SIDES,                    : CIVIL NO: 1:CV-04-1349
                                  :
              Plaintiff           :
                                  :
         v.                       :
                                  : (Magistrate Judge Smyser)
ROBERT MARSH, et al.,             :
                                  :
              Defendants          :


**MEMORANDUM AND ORDER**

I. Background and Procedural History.

On June 23, 2004, the plaintiff, a prisoner proceeding *pro se*, commenced this action by filing a complaint.  On July 12, 2004, the plaintiff filed an amended complaint, and on October 13, 2004, he filed a second amended complaint.  On May 6, 2005, the plaintiff filed a third amended complaint.


The third amended complaint contains a number of claims including claims that the plaintiff has been retaliated against for his legal activities, that he is being held in the Special Management Unit (SMU) at the State Correctional Institution at Camp Hill (SCI-Camp Hill) under punitive conditions, that he is denied magazines and other publications, that on the basis of his

confinement in the SMU he is denied eligibility for parole, that

he was assaulted, and that he has been and continues to be denied

needed mental health treatment.  The plaintiff states that his

claims are based on the First, Eighth and Fourteenth Amendments

to the United States Constitution, the Americans with

Disabilities Act, the Rehabilitation Act and state tort law.  He

is seeking compensatory and punitive damages as well as

injunctive relief.

On February 28, 2005, the plaintiff filed a motion for a

preliminary injunction and a brief and declaration in support of

that motion.  On April 28, 2005, the plaintiff filed a motion for

partial summary judgment, a statement of undisputed facts, a

brief, and documents in support of his motion.

The defendants requested and received a number of

extensions of time to file a brief in opposition to the

plaintiff's motion for a preliminary injunction and brief in

opposition to the plaintiff's motion for partial summary

judgment.  Nevertheless, the defendants failed to file briefs in

opposition to the plaintiff's motions.  Since the defendants

failed to file a brief in opposition to the plaintiff's motion

for a preliminary injunction, by an Order dated July 13, 2005, we

scheduled a hearing on the plaintiff's motion for a preliminary injunction for August 23, 2005.  A writ of habeas corpus ad testificandum was issued to secure the plaintiff's presence at the hearing.  Subsequently the court granted the plaintiff's motion for writs of habeas corpus ad testificandum to secure the presence of four inmate witnesses at the hearing, and writs of habeas corpus ad testificandum were issued for inmates Mark Alan Suter, Shawn Pressley, Robert Gallagher and David Brown.

After the hearing was scheduled, the defendants requested and received an extension of time until August 8, 2005 to file a brief in opposition to the plaintiff's motion for a preliminary injunction and the plaintiff's motion for partial summary judgment.  On August 8, 2005, the defendants filed a brief in opposition to the plaintiff's motion for a preliminary injunction.  Also on August 8, 2005, the defendants filed a brief in opposition to the plaintiff's motion for partial summary judgment, and by an Order dated August 12, 2005, the defendants' brief in opposition to the plaintiff's motion for partial summary judgment was deemed timely filed.

On August 17, 2005, the defendants filed a motion to continue or postpone the hearing on the plaintiff's motion for a

3

preliminary injunction.  The defendants contended that the first

factor the court should consider in ruling on a motion for a

preliminary injunction is whether the moving party has a

reasonable probability of success on the merits, and they

contended that the court's ruling on the plaintiff's motion for

partial summary judgment may answer the question whether the

plaintiff has a reasonable probability of success on the merits

of the claims at issue in his motion for a preliminary

injunction.  The defendants also contended that since they have

now filed briefs in opposition to the plaintiff's motion for a

preliminary injunction and the plaintiff's motion for partial

summary judgment and both sides have supported their respective

positions with declarations, there would be little practical

benefit for the court to hold a hearing.  On the other hand, the

defendants contended that there are risks involved in

transporting the plaintiff and his four inmate witnesses to the

hearing.


        By an Order dated August 18, 2005, we canceled the

hearing on the plaintiff's motion for a preliminary injunction

without prejudice.  We stated that we would determine after we

have addressed the plaintiff's motion for partial summary whether

a hearing is necessary.

The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c).  In this Memorandum and Order we address the plaintiff's motion for partial summary judgment.  We also address the plaintiff's motion for a preliminary injunction and a motion for sanctions filed by the plaintiff.

II.  Plaintiff's Motion for Partial Summary Judgment.

The plaintiff is seeking summary judgment on only one of his claims - his First Amendment claim based on the denial of publications.[1]   The plaintiff claims that the defendants have established a blanket ban restricting him from possessing in his cell publications, editorials, and written material.   He contends that this ban violates his First Amendment free speech rights.

---

1.      In his motion for partial summary judgment, the plaintiff also sought summary judgment on his claim that based on his confinement in the SMU he is not eligible for parole and he has been denied access to statutorily-mandated and prescriptive programs.  However, in his reply brief, the plaintiff states that he is withdrawing his request for summary judgment on that claim.

5

A. Summary Judgment Standard.

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, though the non-moving party must make a showing sufficient to establish the existence of each element of his case on which he will bear the burden of proof at trial." *Huang v. BP Amoco Corp.*, 271 F.3d 560, 564 (3d Cir. 2001); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

"A factual dispute is material if it bears on an essential element of the plaintiff's claim, and is genuine if a reasonable jury could find in favor of the nonmoving party." *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 580 (3d Cir. 2003). In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party. *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). "Our function at

6

the summary judgment stage is not to weigh the evidence and
determine the truth of the matter, but to determine whether there
is a genuine issue for trial." *Federal Home Loan Mortgage Corp.
v. Scottsdale Ins. Co.*, 316 F.3d 431, 443 (3d Cir. 2003).

     B.   The *Turner* Framework.

     The existence in our laws of a constitutional right as to
persons generally does not necessarily mean that prison officials
must refrain from issuing regulations which impinge on that
right.  Prison regulations which impinge on constitutional rights
as they have been recognized and defined outside of the prison
context may be valid if they are reasonably related to legitimate
penological interests.  *Turner v. Safley*, 482 U.S. 78, 89 (1987).
Determining whether a prison regulation which impinges on
constitutional rights is reasonable involves the consideration of
four factors.  *Waterman v. Farmer*, 183 F.3d 208, 212 (3rd Cir.
1999).

     First, there must be a 'valid, rational connection'
between the prison regulation and the legitimate governmental
interest put forward to justify it. *Id.*  A regulation bears no
valid, rational connection to the asserted penological goal if

the logical connection between the regulation and the asserted
goal is so remote as to render the policy arbitrary or
irrational. *Id.* at 215.

The second factor to be considered is whether there are
alterative means for the prisoner to exercise the circumscribed
right. *Id.* at 213.  "If other avenues are open for the inmate to
exercise the right in question, the court should exhibit
deference to the judgment of corrections officials, while if no
other avenues are available, the inmate's right is given greater
weight in the Turner balancing process." *Banks v. Beard,* 399 F.3d
134, 144 (3d Cir. 2005).

The third factor to consider is the costs of
accommodating the prisoner's exercise of his right on the prison.
*Waterman, supra,* 183 F.3d at 213.

The fourth factor to consider is whether "there are
alternatives to the regulation that fully accommodate the
prisoner's rights at de minimis cost to valid penological
interests." *Id.*

Under these factors, the court must determine whether the right in question can be accommodated without significant negative consequences in terms of efficiency and security and whether the prison can easily serve its interests with alternative means without infringing upon the rights of prisoners. *Banks, supra,* 399 F.3d at 146.  The "existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an exaggerated response to prison concerns."  *Thornburgh v. Abbott,*  490 U.S. 401, 418 (1989)(citation and quotations omitted).

"[T]he burden is not on the state to prove the validity of the challenged prison regulation but instead is on the inmate to disprove it." *Williams v. Morton*, 343 F.3d 212, 217 (3d Cir. 2003).

C. Factual Dispute about Publications Allowed.

The plaintiff contends the pursuant to DOC Administrative Directives 803 and 801 he is allowed to possess ten magazines, ten books, one newspaper and one Records Center box of written material. *Doc. 177* at ¶3.  He states that despite those administrative directives the defendants have denied him "access

9

to publications by placing a blanket order prohibiting him from
having these materials." *Id.* at ¶5.   The defendants, however,
deny that they have issued a blanket order prohibiting the
plaintiff from possessing publications.   The defendants assert
that as a Phase 5 inmate in the SMU, the plaintiff has access to
one Records Center box of written materials, access to stored
property for even exchanges, legal and personal mail
correspondence, religious books, one newspaper, and ten
photographs. *Doc. 236 - Marsh Decl.* at ¶4.   The defendants
acknowledge that the plaintiff is not allowed access to
magazines. *Id.* at ¶5.

There is a genuine factual dispute about what materials
the plaintiff has access to.   In connection with the instant
motion for summary judgment, we must view all evidence and draw
all inferences from the evidence in the light most favorable to
the nonmoving party.   Here the defendants are the nonmoving
party.   Accordingly, for purposes of this motion for summary
judgment we must accept the defendants' assertion that the
plaintiff has access to one Records Center box of written
materials, access to stored property for even exchanges, legal
and personal mail correspondence, religious books, one newspaper,
and ten photographs.

Whether the genuine factual dispute about what publications the plaintiff may possess is material to the plaintiff's first amendment claim in this case depends on whether the defendants' acknowledged denial of magazines to the plaintiff is rationally related to a legitimate penological goal.  If the defendants' denial of magazines is not rationally related to a legitimate penological goal, then the dispute about whether the plaintiff is prohibited from possessing other publications is not material.

We will address whether the plaintiff is entitled to summary judgment on his first amendment claim on the basis that the defendants' prohibit him from accessing or possessing magazines.

D. The Third Circuit case of *Banks v. Beard*.

In support of his claim, the plaintiff relies heavily on a recent case from the United States Court of Appeals for the Third Circuit, the case of *Banks v. Beard,* 399 F.3d 134 (3d Cir. 2005).  *Banks* is the most-applicable controlling precedent to this case.  Accordingly, we will set forth the facts in *Banks* and

the Third Circuit's reasoning and holding in *Banks* in some
detail.

In *Banks,* the plaintiff, Ronald Banks, a prisoner housed
in the Long Term Segregation Unit (LTSU) at the State
Correctional Institution at Pittsburgh, challenged the
constitutionality of the policy of the Pennsylvania Department of
Corrections banning access to newspapers, magazines and
photographs for Level 2 LTSU inmates. 399 F.3d at 136.  Banks
argued that the policy violates his free speech rights under the
First Amendment. *Id.*  The district court granted summary judgment
to the defendant and upheld the policy as reasonably related to
legitimate penological interests. *Id.*

The policy at issue in *Banks* prohibited Level 2 LTSU
prisoners from receiving newspapers or magazines directly from
the publisher, from the prison library, or from any other source
for the duration of their confinement at Level 2 status unless
the publication is religious or legal in nature. *Id.* at 137.
Individual articles clipped from publications were also
prohibited, unless they relate to the inmate or his family. *Id.*
The policy further prohibited the possession or receipt of
photographs of spouses, other family members, or friends. *Id.*

12

The inmates in Level 2 of the LTSU were "permitted, however, religious or legal publications and paperback books that can be ordered from the prison library." *Id.*

The DOC contended that the policy in *Banks* served the goal of rehabilitation. *Id.* at 138.  The DOC asserted that Level 2 LTSU inmates are deprived of certain privileges to create an incentive to comply with prison rules and thereby be removed to Level 1 and eventually to the general population. *Id.*  The DOC also asserted that among Level 1 LTSU inmates, the prospect of having privileges denied discourages backsliding. *Id.*

The Third Circuit in *Banks* acknowledged that rehabilitation and deterrence of future infractions of prison rules are legitimate penological interests. *Id.* at 140.  The Court also recognized that the Fifth and Eighth Circuits have upheld temporary restrictions on prisoners' receipt of certain mail and subscription publications. *Id.*  The Court explained that "[t]hose courts held that such restrictions made disciplinary segregation less endurable and therefore discouraged inmates from the rule infractions that would lead to such segregation." *Id.*  The Court in *Banks* stated that it agreed that deterrence of future infractions of prison rules can be appropriate

13

justification for temporarily restricting the rights of inmates but that it could not say that the DOC has shown how the policy at issue in this case serves such a purpose. *Id.* at 140-41.  The Court stated: "We recognize how such a rule could be reasonably related to a penological interest in rehabilitation in 'disciplinary segregation' where inmates are placed for 'specific rule infractions' and for limited and specific periods, but this is not such a case." *Id.* at 141.

The Court noted that inmates are placed in the LTSU because of unacceptable behaviors in other institutions but that they are not placed in the LTSU for a specific infraction of DOC rules. *Id.*  The Court also noted that inmates are not placed in the LTSU for a discrete period of time. *Id.*  The Court concluded that "[a]s administered, it is unclear how the policy would achieve the deterrence it seeks." *Id.*  The Court stated that "[n]ot only is the rehabilitation justification illogical given the nature of LTSU confinement, but LTSU Level 2 is a far cry from the disciplinary contexts in which such bans have been deemed constitutional." *Id.*

The Court further concluded that the DOC offered no evidence that the policy achieves or could achieve its stated

14

rehabilitative purpose. *Id.*  The DOC offered no affidavits
supporting its contention that the policy of withholding
publications from inmates actually results in inmate modifying
their behavior in order to be accorded more publications. *Id.*
The Court stated that the district court did not "examine the fit
between the policy and its rehabilitative goals, whether the ban
was implemented in a way that could modify behavior, or inquire
into whether the DOC's deprivation theory of behavior
modification had any basis in real human psychology, or had
proven effective with LTSU inmates. *Id.* at 142.  The Court noted
that at oral argument counsel for the DOC had stated that it was
a "hope" that the policy would modify behavior and that Banks had
cited language from several cases to support the opposite
contention that isolating prisoners from the goings-on in the
outside world tends to undercut any genuine rehabilitation. *Id.*
The Court concluded that there was no evidence in the record to
support the effectiveness of the policy but that  it seems likely
"that the ban may produce less rather than more compliance in at
least some inmates." *Id.*

     The DOC also contended that the policy served security
and safety goals in that the less material a Level 2 LTSU inmate
has in his cell the easier it is for corrections officers to

15

detect concealed contraband and provide security and that
newspapers and magazines can be rolled up and used as blow guns
or spears, can fuel cell fires, or can be used as crude tools to
catapult feces at guards. *Id.* at 138.  The Third Circuit
concluded that on the record before it it could not conclude that
there was a valid rational connection between the ban on
periodicals and photographs and the security concerns put forth
to justify it. *Id.* at 142.  First, the Court noted that there was
no evidence in the record of the misuse of periodicals or
photographs in the ways described by the DOC. *Id.*  Second, the
Court agreed with Banks that given the materials Level 2 inmates
are permitted in their cells, prohibiting a single newspaper or
magazine has no significant relationship to the stated security
objectives. *Id.* at 143.  The Court noted that the inmates are
permitted many other items in their cells which they could use to
fuel fires, hurl waste, conceal contraband and create weapons.
*Id.* at 143.   The Court acknowledged that a prison policy does
not need to be narrowly tailored to the harm it addresses to pass
constitutional muster. *Id.*  However, the Court stated that "if
the prohibition of newspapers, magazines and photographs has only
a minimal effect on security in the LTSU because of the other
materials that they are permitted in the cells, the relationship

16

between the policy and the penological interest may be too attenuated to be reasonable." *Id.* at 144.

As to the second *Turner* factor, the Court in *Banks* found that the policy was a blanket prohibition and that as long as an inmate is at Level 2 status he has no alternative means to exercise his First Amendment right of access to a reasonable amount of newspapers, magazines, and photographs. *Id.* at 145.

As to the third and fourth *Turner* factors, the Court concluded that on the record before it it could not agree with the DOC that accommodation of the prisoners' rights by giving them reasonable access to a limited number of periodicals and photographs would have a significant ripple effect on fellow inmates or on prison staff. *Id.* at 146.  The Court noted that Banks was not seeking to be allowed unmitigated and unregulated access to all periodicals. *Id.*  Rather, Banks proposed either: 1) that the DOC establish a specific reading period, or several different reading periods, in which guards deliver a single newspaper or magazine to an inmate's cell, if requested, and retrieve it at the close of the period; or 2) that prisoners be escorted to the secure mini-law library to read a periodical of their choosing. *Id.*  As to the first-requested accommodation,

17

the Court in *Banks* stated that "even if limited distribution of

periodicals were to require additional monitoring, such an

accommodation would have a minimal impact on prison resources."

*Id.* at 147.  Similarly, as to the second-requested accommodation,

the Court in *Banks* stated that even if demand for mini-law

library sessions may increase if the policy were changed, the DOC

has not shown how this would  significantly increase the burden

on prison staff. *Id.*


        E.  Analysis of the *Turner* factors.


            1. Rational Relationship to Legitimate Penological
               Interests.


        The first *Turner* factor is whether there is a valid,

rational connection between the prison regulation and the

legitimate governmental interest put forth to justify it.


        The defendants contend that the ban on Phase 5 SMU

inmates possessing magazines serves two penological interests -

rehabilitation and safety and security.  Defendant Marsh, the

Unit Manager of the SMU, states in his declaration that

"[d]enying or limiting privileges, such as some reading material

like magazines for inmates in Phase V of the SMU, serves the

legitimate penological interests in rehabilitating the inmates by encouraging good behavior." *Doc. 236 - Marsh Decl.* at ¶5. Defendant Marsh also states that "[a]lthough limiting access to magazines and other reading materials to inmates is used primarily to encourage inmates to behave appropriately in prison, it also has the secondary benefit of safety and security, by limiting the inmates' ability to set fires, throw feces, and pass items in the SMU." *Id.* at ¶6.

The plaintiff contends that the defendants' denial of publications is not rationally related to rehabilitation or security.

As discussed above, for purposes of the instant motion for summary judgment we must accept as true the defendants' assertion that the plaintiff has access to one records-center box of written materials, access to stored property for even exchanges, legal and personal mail correspondence, religious books, one newspaper, and ten photographs.  Based on the current record, it can not be inferred that the plaintiff is completely isolated from the goings-on of the outside world.  Although he is not allowed magazines, the plaintiff is allowed one daily newspaper through which he can remain abreast of current events.

19

As in *Banks,* the defendants have not produced any
empirical evidence to support their contention that their policy
of prohibiting magazines to Phase 5 inmates achieves or could
achieve its stated rehabilitative goal.  However, since,
according to the defendants, Level 5 inmates are allowed access
to a newspaper the fit between the policy and its rehabilitative
goals does not seem as remote as it was in *Banks.*  Given a Level
5 SMU inmate's opportunity for a basic connection to the outside
world through a daily newspaper, the deprivation of magazines
may, in fact, serve as an incentive to modify behavior or avoid
backsliding.  The defendants have submitted the declaration from
defendant Marsh, the Unit Manager of the SMU, who states that
limiting privileges such as magazines serves the interest of
rehabilitation by encouraging good behavior.

We note that in *Banks* the Third Circuit reversed a grant
of summary judgment to the defendants.  In that context, the
Court was bound to view all of the evidence and draw inferences
in favor the plaintiff, as the non-moving party.  In this case,
on the other hand, it is the plaintiff who has moved for summary
judgment.  In this context, all inferences are drawn in favor of
the defendants, as the non-moving party.

20

Based on this summary judgment record, we can not conclude that the defendants' policy of prohibiting Phase 5 SMU inmates from accessing or possessing magazines is not rationally related to the stated goal of rehabilitating inmates by encouraging good behavior.  Given that conclusion regarding rehabilitation, we need not, and do not, address the defendants' contention that the policy is rationally related to security and safety.

2.   Alternative Means for Exercising the Burdened Right.

Again, for purposes of the instant motion we accept as true the defendants' assertion that the plaintiff has access to one records-center box of written materials, access to stored property for even exchanges, legal and personal mail correspondence, religious books, one newspaper, and ten photographs.  Unlike, the prisoners in *Banks*, the plaintiff in this case has access to a newspaper and ten photographs.  Given that access, on the current record it appears that the plaintiff has other avenues to maintain his ties to the outside world and to exercise his First Amendment rights.

3.   Accommodation.

Neither party has presented any evidence or argument about the third or fourth *Turner* factors.  Accordingly, those factors do not weigh in our decision on the instant motion.

F.   Conclusion.

Based on the foregoing, on the instant record we can not conclude that the defendants' policy of denying the plaintiff magazines is not reasonably related to legitimate penological interests.  Thus, the factual dispute about what publications the plaintiff is entitled to receive is material to his First Amendment claim.  Therefore, the plaintiff is not entitled to summary judgment on that claim.

III. Plaintiff's Motion for a Preliminary Injunction.

The plaintiff is seeking a preliminary injunction directing defendants Beard, Kelchner and Marsh to allow him to

possess in his cell ten magazines, one newspaper, ten books and one Records Center box of written material. *See Doc. 152.*[2]

In order to obtain a preliminary injunction, the moving party must show: (1) a reasonable probability of success on the merits of the litigation and (2) that the movant will be irreparably injured pendente lite if relief is not granted. *Punnett v. Carter*, 621 F.2d 578, 582 (3d Cir. 1980). "Moreover, while the burden rests upon the moving party to make these two requisite showings, the district court 'should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest.'" *Acierno v. New Castle County*, 40 F.3d 645, 652 (3d Cir. 1994)(quoting *Delaware River Port Auth v. Transamerican Trailer Transp., Inc.*, 501 F.2d 917, 920 (3d Cir. 1974)).  The determination of whether a preliminary injunction should be issued depends on a balancing of these factors. *Punnett, supra*, 621 F.2d at 582. "Furthermore, when the preliminary injunction is directed not

---

2.
     The plaintiff also initially sought a preliminary injunction ordering the defendants to provide him with statutorily-mandated and prescriptive programs.  However, in his reply brief, the plaintiff withdrew his request for a preliminary injunction in that regard.

merely at preserving the status quo but . . . at providing

mandatory relief, the burden on the moving party is

particularly heavy." *Id*.


     As discussed above, the defendants contend that the

plaintiff has access to one Records Center box of written

materials, access to stored property for even exchanges, legal

and personal mail correspondence, religious books, one

newspaper, and ten photographs.  However, the plaintiff states

in his reply brief that although he was previously permitted to

have one newspaper the defendants have recently filed a new

blanket policy banning Phase 5 inmates from receiving,

subscribing or purchasing newspapers, magazines, etc.  In

support of that assertion, the plaintiff submitted a Memorandum

from defendant Marsh to SMU inmates dated April 29, 2005.  That

Memorandum states:

> Effective April 15, 2005, Department policy
> 6.5.1. Administration of Security Level 5
> Housing Units directs that a Disciplinary
> Custody Status Inmate (DC) may only receive
> newspapers and magazines for which he had a
> subscription prior to placement in DC status.
> Therefore, DC status inmates are not permitted
> to begin/renew newspaper or magazine
> subscriptions. It also directs DC status
> inmates are only permitted to purchase approved
> commissary items.  Outside purchases are
> prohibited.

*Doc. 270* at Exhibit A.

The plaintiff also states that even before April 29, 2005, the defendants were denying Phase 5 inmates access to all magazines and newspapers.  In support of that contention, the plaintiff filed declarations from inmates Sean Pressley and Ahmeen Mustafa.  Pressley states in his declaration that he was transferred to the SMU on June 11, 2003 and at that time he was denied the opportunity to possess any magazines. *Doc. 270* at Exhibit B.  He states that while housed in the SMU all magazines that came to him in the mail were withheld from him. *Id.*  Mustafa states in his declaration that upon entering the SMU on January 19, 2005 his outside publications - two magazines - were confiscated. *Id.*  He also states that he is being denied magazines, newspapers, etc. *Id.*

The plaintiff and the defendants agree that the plaintiff is not allowed access to magazines.  However, there is a dispute about whether the plaintiff is allowed to access a newspaper.  As discussed above, in connection with the plaintiff's motion for partial summary judgment we were required to view the evidence in the light most favorable to the defendants as the nonmoving party, and, therefore, for purposes of that motion we accepted as true the defendants'

25

assertion that the plaintiff has access to one Records Center box of written materials, access to stored property for even exchanges, legal and personal mail correspondence, religious books, one newspaper, and ten photographs.  Unlike in the summary judgment context, in connection with the plaintiff's motion for a preliminary injunction we are not required to accept the defendants' contention as to what the plaintiff has access to as true.  If, as the plaintiff contends, he does not have access to a newspaper (in addition to not having access to magazines), we conclude on the basis of the reasoning in *Banks* that the plaintiff has a reasonable probability of success on the merits of his First Amendment claim.

"The loss of First Amendment rights, for even minimal periods of time, unquestionably constitutes irreparable injury."  *Abu-Jamal v. Price,* 154 F.3d 128, 136 (3d Cir. 1998)(quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).   The plaintiff may be able to show irreparable injury if he is being denied access to a newspaper (and magazines).

Because there is a factual dispute about whether the plaintiff is receiving a newspaper, we will reschedule the

hearing on the plaintiff's motion for a preliminary injunction.

IV.  Plaintiff's Motion for Sanctions.

The plaintiff is seeking sanctions against the defendants based on their failure to timely respond to his pending motions and to timely provide discovery.

The procedural history of this case is relevant to the plaintiff's motion for sanctions and, thus, will be set forth in some detail.

On February 28, 2005, the plaintiff filed his motion for a preliminary injunction and a brief and declaration in support of that motion.

On April 6, 2005, the plaintiff filed a motion to compel discovery and a brief in support of that motion.

The defendants failed to file a brief in opposition to the plaintiff's motion for a preliminary injunction, and by an Order dated April 11, 2005, the defendants were ordered to file

a response to the plaintiff's motion for a preliminary
injunction within ten days.

On April 25, 2005, the defendants filed a motion for an
enlargement of time *nunc pro tunc* to file their brief in
opposition to the plaintiff's motion for a preliminary
injunction.  By an Order dated April 26, 2005, the defendants'
motion for an enlargement of time was granted and the
defendants were ordered to file and serve their opposing brief
on or before May 27, 2005.

On April 28, 2005, the plaintiff filed his motion for
partial summary judgment, a statement of undisputed facts, a
brief, and documents in support of his motion.

On April 30, 2005, the defendants filed a motion for an
extension of time *nunc pro tunc* to respond to the plaintiff's
discovery requests and his motion to compel.  On April 30,
2005, the defendants also filed a motion for an extension of
time *nunc pro tunc* to file an answer to the plaintiff's
statement of material facts and a brief in opposition to his
motion for partial summary judgment.  By Orders dated May 2,
2005, the defendants' motions for extensions were granted and

28

the defendants were ordered to serve their discovery responses and briefs in opposition to the plaintiff's motion to compel and the plaintiff's motion for partial summary judgment on or before May 27, 2005.

On May 9, 2005, the plaintiff filed another motion to compel discovery and a brief in support of that motion.

The defendants did not file a brief in opposition to the plaintiff's motion for a preliminary injunction, his motion for partial summary judgment or his motion to compel on or before May 27, 2005 as ordered.  On June 6, 2005, the defendants filed a motion for an enlargement of time to respond to the plaintiff's outstanding discovery requests, his motion to compel discovery, his motion for a preliminary injunction and his motion for partial summary judgment.  By an Order dated June 7, 2005, the defendants' motion for an enlargement of time was granted and the defendants were ordered to respond to the above on or before July 1, 2005 or face sanctions for failing to do so.

Without explanation, the defendants failed to respond to the plaintiff's discovery requests or his pending motions.

Since the defendants failed to file a brief in opposition to the plaintiff's motion for a preliminary injunction, by an Order dated July 13, 2005, we scheduled a hearing on that motion for August 23, 2005.

On July 14, 2005, the plaintiff filed his motion for sanctions and a brief in support of that motion.

By an Order dated July 20, 2005, the plaintiff's unopposed motions to compel were granted.  The defendants were order to serve on the plaintiff within ten days full and complete answers to the plaintiff's first and second set of requests for the production of documents and to the interrogatories addressed to defendants Killeen, Spector and Kelchner.

On July 25, 2005, new counsel entered his appearance on behalf of the defendants.  On August 1, 2005, the defendants' new counsel filed a brief in opposition to the plaintiff's motion for sanctions.  Also on August 1, 2005, defendants' new counsel filed a motion for an enlargement of time to file a brief in opposition to the plaintiff's motion for partial summary judgment and a motion for an enlargement of time to

file a brief in opposition to the plaintiff's motion for a

preliminary injunction.  New defense counsel stated in these

motions that, after previous defense counsel - John Talaber,

Esquire[3] - took an unscheduled leave of absence, he was

reassigned most of previous counsel's caseload.  He requested a

one-week extension of time.  The defendants were granted an

extension of time until August 8, 2005 to file a brief in

opposition to the plaintiff's motion for a preliminary

injunction.  On August 8, 2005, the defendants filed a brief in

opposition to the plaintiff's motion for a preliminary

injunction.  Also on August 8, 2005, the defendants filed a

brief in opposition to the plaintiff's motion for partial

summary judgment, and by an Order dated August 12, 2005, the

defendants' brief in opposition to the plaintiff's motion for

partial summary judgment was deemed timely filed.

On August 8, 2005, the plaintiff filed a reply brief in

support of his motion for sanctions.

---

3.

We note that Mr. Talaber is still one of the attorneys of
record in this case.  On September 16, 2005, Mr. Talaber filed a
motion to withdraw his appearance.  The court has not yet ruled on
that motion.

As indicated earlier, on defendants' request and by an Order dated August 18, 2005, we canceled the hearing on the plaintiff's motion for a preliminary injunction without prejudice.

In his motion for sanctions, the plaintiff requests sanctions pursuant to Fed.R.Civ.P. 16(f) based on the defendants' failure to comply with the order of June 7, 2005 which ordered the defendants to respond to the plaintiff's discovery requests, his motion to compel discovery, his motion for a preliminary injunction and his motion for partial summary judgment or face sanctions for failing to do so.  In his brief in support of his motion for sanctions, the plaintiff requests that the court impose any sanctions that it sees fit.  In their brief in opposition to the plaintiff's motion for sanctions, the defendants state that they now have provided responses to all of the plaintiff's outstanding discovery requests.  The defendants, through their new counsel, request that the court not impose sanctions.  They also state that sanctions against the defendants would be unjust but that "[i]n light of the circumstances in this case, the same can not be said for entering sanctions against lawyers involved in his case." *Doc. 234 at 4.*  The defendants also state:

> Being repeatedly late with Court filings is
> inexcusable. Filing motions for enlargement of
> time over and over again, some of which appear
> to be more involved and take more effort than a
> response to the underlying request, compounds
> the problem.  Undersigned counsel assures the
> Court that this matter is being addressed
> appropriately.  There is little that can be
> said in defense of what has occurred in this
> case to date.  Undersigned counsel apologizes
> to the Court for the present situation.

*Id.*

In his reply brief, the plaintiff states that he is seeking sanctions not just on the basis of the defendants' failure to timely provide discovery but also based on the defendants failure to timely file briefs in opposition to his motions.  As to discovery, the plaintiff states that by objecting to over 95% of his discovery requests, the defendants have failed to comply with the order granting his motions to compel.

We believe sanctions in this case may be warranted.  We will schedule a hearing to address the issue of what sanctions, if any, are appropriate in this case.  At this hearing, we would expect to hear testimony from Mr. Talaber regarding the reasons for the failures in this case.  The hearing on the plaintiff's motion for sanctions will be combined with the hearing on the plaintiff's motion for a preliminary injunction.

We note that on September 15, 2005, the plaintiff filed
a motion (doc. 272) entitled "Motion Requesting Assistance" and
a brief in support of that motion.  The plaintiff states that
on August 1, 2005, the defendants objected to over 98% of his
requests for documents that were the subject of the court's
earlier motion granting his motions to compel.  He states that
the defendants objected to all but three of his twenty-seven
document requests.  He further states that on or around August
18, 2005, the defendants allowed him to review the documents
produced in response to the three requests that they did not
object to.  He states, however, that they handed him hundreds
of documents (some of which he did not request) that were not
labeled or organized and told him that he had ten minutes to
review the documents and take notes.  The plaintiff states that
there was no way he would have been able to review the
documents in ten minutes so he requested to be given copies of
the documents.  That request was denied on the basis that the
plaintiff does not have money to pay for copies.  The plaintiff
also contends that the defendants waived any objections to this
requests by failing to timely respond to his requests and by
failing to oppose his motions to compel.  He argues that the
defendants have continuously tried to duck and dodge providing

34

discovery and that they have tried to make things difficult on

the plaintiff from the beginning of this case.  The plaintiff

requests an order directing the defendants to turn over all

documents in response to all of the his requests for the

production of documents, directing the defendants to give him

photocopies of all of the documents and directing that his

inmate account be debited for the cost of copies.  Since the

plaintiff's contentions in his motion requesting assistance

concern discovery disputes, they are relevant to his motion for

sanctions.[4]  The parties shall be prepared to address the

contentions made by the plaintiff in his motion requesting

assistance at the hearing on the plaintiff's motion for

sanctions.[5]

---

4.
      Although not specifically suggested in the motion, the
plaintiff's motion for assistance raises the question whether, if
sanctions for the defendants' delay in the discovery process are
warranted, requiring the defendants to provide photocopies of all
of the documents in response to all of the plaintiff's requests for
documents would be an appropriate sanction or part of an
appropriate sanction.  The parties should consider that question
and be prepared to address it at the hearing.

5.
      We note that the defendants are still required to file a
brief in opposition to the plaintiff's motion for assistance in
accordance with Local Rule 7.6.  Otherwise, the defendants will be
deemed not to oppose the motion.

35

V.   Plaintiff's Motion for Counsel.


     By an Order dated November 9, 2004, the plaintiff's first
motion for the appointment of counsel was conditionally granted.
Pursuant to Local Rule 83.34.4, the Order of November 9, 2004 was
sent to Charles W. Rubendall, III, the *pro bono* chair of the
Middle District Chapter of the Federal Bar Association.  Mr.
Rubendall was directed to inform the court within sixty days
whether a volunteer attorney will enter his or her appearance in
this case or, in the alternative, that no volunteer attorney
accepts the appointment.


     By a letter dated January 10, 2005, Mr. Rubendall
indicated that he has made arrangements with the Department of
Corrections to obtain pertinent medical records and that he has
received a release from the plaintiff allowing the release of
those records to a volunteer physician for review.  Mr. Rubendall
requested an additional sixty days to determine if a volunteer
attorney will represent the plaintiff in this case.  By an Order
dated January 11, 2005, Mr. Rubendall was directed to inform
the court, on or before March 11, 2005, whether a volunteer
attorney will enter his or her appearance in this case or, in the
alternative, that no volunteer attorney accepts the appointment.
Mr. Rubendall was subsequently granted an extension of time until
April 22, 2005 to inform the court whether a volunteer attorney

36

will enter his or her appearance in this case or, in the alternative, that no volunteer attorney accepts the appointment.

By a letter dated April 14, 2005, Mr. Rubendall informed the court that no volunteer attorney can be provided for the plaintiff in this case.

Since an attorney had not been found to represent the plaintiff in this case, we revoked the order of November 9, 2004 to the extent that it conditionally granted the plaintiff's motion for the appointment of counsel.

On September 15, 2005, the plaintiff filed another motion for the appointment of counsel.  He requests that the court try again to find counsel to represent him.  More specifically, he requests that the court contact the following attorneys: Angus Love, Esquire and Thomas Thornton, Esquire. The plaintiff does not explain why he suggests these two attorneys.  However, Mr. Thornton is an assistant federal public defender and we will not contact him about this civil case.

We will deny the plaintiff's motion for the appointment of counsel.  We will also send a letter and a copy of this order to Attorney Love as well as to Jere Krakoff, Esquire, who

is the plaintiff's attorney in the *Banks* case.   The motion to appoint counsel will be reconsidered and granted if either attorney agrees to be appointed.

VI.   Order

      **IT IS ORDERED** that the plaintiff's motion (doc. 174) for partial summary judgment is **DENIED.   IT IS FURTHER ORDERED** that a hearing on the plaintiff's motion (doc. 150) for a preliminary injunction and the plaintiff's motion (doc. 213) for sanctions shall be held on October 5, 2005, at 9:30 a.m., in Courtroom 5, Federal Building, Third and Walnut Streets, Harrisburg, Pennsylvania.   A writ of habeas corpus ad testificandum will be issued to secure the plaintiff's presence at the hearing.

                                    ***/s/ J. Andrew Smyser***
                                      J. Andrew Smyser
                                      Magistrate Judge

DATED:   September 21, 2005.